# EXHIBIT 10

TRAVELERS

385 Washington Street
St. Paul, MN 55102

Jill James
Claim Counsel
Bond & Specialty Insurance Claim
Phone: (651) 310-3927
Fax: (866) 608-9632
Email: JAJAMES@travelers.com

June 9, 2021
**Via E-Communication Only**

Mr. Joe Keith
SJ Computer, LLC
2817 Eagandale Blvd
EAGAN, MN 55121
E-mail Address: joe@sjcomputersmn.com

| | | |
|---|---|---|
| RE: | Insured Name: | SJ Computer, LLC |
| | Policy Number: | 037-LB-107244011 |
| | Matter Number: | 037-BSE-T2105657-RG |

Dear Mr. Keith:

This is a follow-up to our communication dated June 3, 2021 and your letter dated June 2, 2021, and will serve to acknowledge Travelers Casualty and Surety Company of America's (hereinafter "Travelers") receipt of the proof of loss dated April 8, 2021 submitted for coverage under the above-captioned Policy.

Based on our review of the materials provided to us, and for the reasons set forth below, the claim is covered under the Social Engineering Fraud Endorsement. Consistent with our review, we issued a check for $100,000.00 which represents the Single Loss Liability Limit for the Social Engineering Fraud Endorsement. We also reviewed the claim under Insuring Agreements F.1. Computer Fraud and G. Funds Transfer Fraud. Unfortunately, there is no coverage under these Insuring Agreements for the reasons detailed below. Please note that certain terms in this letter are defined terms under the Policy. Kindly refer to the Policy for the specific meanings of those terms.

**Brief Description of Facts**

Travelers understands SJ Computer, LLC ("SJ Computer") discovered on Monday, April 5, 2021, that it's Purchasing Manager, Serge Ngouambe, allegedly had his email account compromised. On that Monday morning, SJ Computer's CEO, Hussain Anwar, was receiving emails from his email address that did not quite make sense. Mr. Anwar called Mr. Ngouambe to question him about the emails and discovered that Mr. Ngouambe had never sent them. Allegedly, someone else had compromised his account and was sending the emails.

Following this discovery, SJ Computer also learned that one of its Vendors, Electronic Recyclers International ("ERI"), based at 293 NC 740 Hwy, Bldg 134, Badin, NC 28009, had not received two wire transfers intended for ERI, totaling $593,555.00. Mr. Anwar sends all wire transfers. ERI's email, which was forwarded to Mr. Anwar from Mr. Ngouambe, included a request to change the recipient account. As in all requests to change an account, Mr. Anwar called to confirm, but did not reach anyone and left a voicemail message. He waited 2 days for a response from ERI, but none came before the March 31st deadline. Therefore, assuming the request in the

email was legitimate, Mr. Anwar made the change to the recipient account and sent the following wires:

1. Wednesday, March 31, 2021, one from SJ Computer's Wells Fargo Business Checking Account # 9973417570 in the amount of $450,555.00; and
2. Wednesday, March 31, 2021, one from SJ Computer's Associated Bank Business Checking Account # 2913085334 in the amount of $143,000.00.

The original ERI invoices appear to have been modified as all information on them pertaining to the products SJ Computer purchased is correct, however, the Bank Account under the "Payment Options and Notices" section of the invoice has been modified and changed to an account number not belonging to ERI.

As the account where the money was wired does not actually belong to ERI, they never received the funds. As indicated above, it is alleged that Mr. Ngouambe's email account was compromised. It is further alleged the fraudsters most likely had the BB&T Bank Account. It appears that ERI's email may also have been compromised.

**The Policy**

Travelers issued Policy number 037-LB-107244011 to SJ Computer, LLC with effective dates from February 11, 2021 to February 11, 2022. Travelers has reviewed this claim under all available coverages. The Policy provides:

I. INSURING AGREEMENTS

This Crime Policy provides coverage under each of the following Insuring Agreements. Notwithstanding the aforesaid, if ITEM 5 of the Declarations indicates that any Insuring Agreement is "Not Covered," then such Insuring Agreement and any other reference thereto is deemed to be deleted from this Crime Policy.

**F. COMPUTER CRIME**

1. Computer Fraud

The Company will pay the Insured for the Insured's direct loss of, or direct loss from damage to, Money, Securities and Other Property directly caused by Computer Fraud.

**G. FUNDS TRANSFER FRAUD**

The Company will pay the Insured for the Insured's direct loss of Money and Securities contained in the Insured's Transfer Account directly caused by Funds Transfer Fraud.

**SOCIAL ENGINEERING FRAUD**[1]

[1] As provided by the Social Engineering Fraud Insuring Agreement Endorsement (CRI-19085 Ed. 09-19).

The Company will pay the Insured for the Insured's direct loss from the transferring, paying or delivering of Money or Securities, directly caused by Social Engineering Fraud.

The Policy provides the following Definitions in Section III., some of which are amended, replaced or provided by endorsement:

E. Computer Fraud[2] means an intentional, unauthorized, and fraudulent entry or change of data or computer instructions directly into a Computer System:

1. by a natural person or entity, other than an Employee, Authorized Person, independent contractor, or any individual under the direct supervision of the Insured, including any such entry or change made via the internet, provided that such entry or change causes Money, Securities, or Other Property to be transferred, paid, or delivered from inside the Premises or from the Insured's Financial Institution Premises, to a place outside the Premises or the Insured's Financial Institution Premises; or

2. made by an Employee or Authorized Person acting in good faith upon an intentional, unauthorized, and fraudulent instruction received from a computer software contractor who has a written agreement with the Insured to design, implement, or service Computer Programs for a Computer System covered under section I. INSURING AGREEMENTS, F. COMPUTER CRIME .

For purposes of this definition, an intentional, unauthorized, and fraudulent entry or change of data or computer instructions does not include such entry or change made by an Employee, Authorized Person, independent contractor, or any individual under the direct supervision of the Insured made in reliance upon any fraudulent electronic, cable, teletype, telephonic voice, telefacsimile, or written instruction, except as defined in E.2. above. An intentional, unauthorized, and fraudulent entry or change of data or computer instructions also does not include such entry or change that involves the use, or purported use, of any Credit, Debit, or Charge Card or any access, convenience, identification, stored value, or other similar cards, including the information contained on such cards

Computer Fraud does not include Social Engineering Fraud or Funds Transfer Fraud.

***

G. Computer System[3] means:

1. any computer; and

2. any input, output, processing, storage, or communication device, or any related network, cloud service, operating system, or application software, that is connected to, or used in connection with, such computer,

---

[2] As modified by the Social Engineering Fraud Insuring Agreement Endorsement (CRI-19085 Ed. 09-19).
[3] As provided by the Social Engineering Fraud Insuring Agreement Endorsement (CRI-19085 Ed. 09-19).

that is rented by, owned by, leased by, licensed to, or under the direct operational control of, the Insured.

***

W. Financial Institution means:

1. a bank, trust company, savings bank, credit union, savings and loan association or similar thrift institution; or

2. a stock brokerage firm, mutual fund, liquid assets fund or similar investment institution.

X. Financial Institution Premises means the interior of that portion of any building occupied by a Financial Institution (including any night depository chute and any safe maintained by such Financial Institution), transfer agent or registrar or similarly recognized place of safe deposit.

***

AA. Funds Transfer Fraud[4] means:

1. an electronic, telegraphic, cable, teletype, or telephone instruction, fraudulently transmitted to a Financial Institution directing such institution to debit a Transfer Account and to transfer, pay, or deliver Money or Securities from the Transfer Account , which instruction purports to have been transmitted by the Insured but was in fact fraudulently transmitted by someone other than the Insured without the Insured's knowledge or consent; or

2. a fraudulent written instruction, other than one covered under Insuring Agreement B., issued to a Financial Institution directing such Financial Institution to debit a Transfer Account and to transfer, pay, or deliver Money or Securities from such Transfer Account by use of an electronic funds transfer system at specified intervals or under specified conditions, which written instruction purports to have been issued by the Insured but was in fact fraudulently issued, Forged, or altered by someone other than the Insured without the Insured's knowledge or consent.

Funds Transfer Fraud does not include Social Engineering Fraud.

***

VV. Transfer Account means an account maintained by the Insured at a Financial Institution from which the Insured can initiate the transfer, payment or delivery of Money or Securities:

[4] As modified by the Social Engineering Fraud Insuring Agreement Endorsement (CRI-19085 Ed. 09-19).

1. by means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly or through an electronic funds transfer system; or

2. by means of written instructions (other than those described in Insuring Agreements B. and H.1.) establishing the conditions under which such transfers are to be initiated by such Financial Institution through an electronic funds transfer system.

The Social Engineering Fraud Insuring Agreement Endorsement[5] adds the following relevant definitions:

> Authorized Person means an Officer-Shareholder, sole proprietor, director, trustee, natural person partner, LLC Manager or LLC Member who is authorized by the Insured to transfer, pay, or deliver Money or Securities or to instruct Employees or other Authorized Persons to transfer, pay, or deliver Money or Securities.
>
> Communication means an electronic, telegraphic, cable, teletype, telephonic voice, telefacsimile, or written instruction received by an Employee or Authorized Person that:
>
> 1. directs the Employee or Authorized Person to transfer, pay, or deliver Money or Securities;
>
> 2. contains a misrepresentation of a material fact; and
>
> 3. is relied upon by the Employee or Authorized Person, believing the material fact to be true.
>
> Social Engineering Fraud means the intentional misleading of an Employee or Authorized Person by a natural person impersonating:
>
> 1. a Vendor, or that Vendor's attorney;
>
> 2. a Client, or that Client's attorney;
>
> 3. an Employee; or
>
> 4. an Authorized Person,
>
> through the use of a Communication
>
> Vendor means an entity or natural person that has provided goods or services to the Insured under a genuine, preexisting, written agreement or other agreed-upon arrangement.
>
> Vendor does not include any Financial Institution, asset manager, armored motor vehicle company, or similar entity.

[5] Social Engineering Fraud Insuring Agreement Endorsement (CRI-19085 Ed. 09-19).

Other terms, conditions, and exclusions may act to limit or exclude coverage.

**Coverage Analysis**

As referenced above, Travelers conducted a review and analysis under every available Insuring Agreement, including Insuring Agreements F.1. Computer Fraud, Insuring Agreement G. Funds Transfer Fraud, and the Social Engineering Fraud Insuring Agreement which was added by Endorsement. After careful review and analysis of the documentation and information provided, the claim triggers the Social Engineering Endorsement. Consistent with the available coverage, Travelers issued a check for $100,000.00, which is the Single Loss Limit under the Social Engineering Fraud Endorsement. There is also $5,000.00 available for Claims Expense. However, no claim expense was submitted to date. The claim is not covered under Insuring Agreements F. Computer Crime or G. Funds Transfer Fraud for the reasons detailed below. If you would like Travelers to provide a formal coverage analysis under any other insuring agreement, please let us know.

***Insuring Agreement – Social Engineering Fraud***

The loss is covered under the Social Engineering Fraud Insuring Agreement. The Insuring Agreement provides certain coverage for the Insured's direct loss from paying Money directly caused by Social Engineering Fraud. Social Engineering Fraud is the intentional misleading of an Employee or Authorized Person by a natural person purporting to be a Vendor through the use of Communication. Social Engineering Fraud does not include Computer Fraud or Funds Transfer Fraud. Vendor means an entity or natural person that has provided goods or services to the Insured under a genuine, preexisting, written agreement or other agreed-upon arrangement. Communication is defined as an electronic or written instruction received by an Employee that directs the Employee to pay Money, contains a misrepresentation of a material fact; and is relied upon by the Employee, believing the material fact to be true.

Here, the fraudulent emails purported to be from Mr. Ngouambe, SJ Computer's CEO, forwarding information purportedly from SJ Computer's Vendor, ERI. The emails are then directed to Mr. Anwar, an SJ Computer Employee. The fraudulent emails contain a misrepresentation of material fact and direct Mr. Anwar to change the account information for wire transfer payments intended for ERI, and then requesting confirmation once payment has been made to ERI for a winning bid and order. Mr. Anwar relied on the misrepresentations in these emails he believed were legitimately forwarded from Mr. Ngouambe, changed the wire transfer information, and issued payment via the fraudulent wire instructions. Because SJ Computer suffered a direct loss from paying Money directly caused by Social Engineering Fraud, the claimed loss is covered under the Social Engineering Fraud Insuring Agreement. Consistent with the coverage, Travelers issued a check for $100,000.00, which is the Single Loss Limit. Regrettably, the loss suffered far exceeds the Single Loss Limit.

Because the above loss falls within the definition of Social Engineering Fraud, it is neither Computer Fraud nor Funds Transfer Fraud. As provided in the Social Engineering Fraud Endorsement, Social Engineering Fraud does not include Computer Fraud or Funds Transfer Fraud. Accordingly, there is no Computer Fraud nor Funds Transfer Fraud coverage available for this loss.

***Coverage does not arise under Insuring Agreement F.1. Computer Fraud***

Based on the information submitted, the loss does not fall within the coverage provided by Insuring Agreement F.1. Computer Fraud. The Computer Fraud Insuring Agreement is triggered only if the intentional, unauthorized, and fraudulent entry of data or computer instructions into a Computer System causes Money to be transferred, paid or delivered from inside SJ Computer's Premises or Financial Institution Premises to a place outside SJ Computer's Premises or Financial Institution Premises. The fraudulent e-mails did not, by themselves, "cause Money, Securities or Other Property to be transferred, paid, or delivered from inside the Premises or from the Insured's Financial Institution Premises, to a place outside the Premises or Insured's Financial Institution Premises." Rather, the claimed loss occurred only after an Employee voluntarily used his authorized access to change banking information for the wire transfer intended for ERI. In this case, the fraudster never directly entered instructions into the SJ Computer's Computer System, which instructions caused the Computer System to transfer Money from SJ Computer's Premises or Financial Institution Premises. Rather, it was an Employee, not the fraudster that modified the wire transfer information to a different account. As such, there is no Computer Fraud and the fraudulent e-mails constitute an indirect, not a direct, cause of SJ Computer's loss and they are not within the scope of Insuring Agreement F.1.

Coverage is not available under Insuring Agreement F.1. Computer Fraud for the separate and independently sufficient reason that the claimed loss falls within the definition of Social Engineering Fraud. As provided in the Social Engineering Fraud Endorsement, Social Engineering Fraud does not include Computer Fraud or Funds Transfer Fraud. As a result, this loss cannot also be Computer Fraud.

***Coverage does not arise under Insuring Agreement G. Funds Transfer Fraud***

Based on the information submitted, the claimed loss does not fall within the coverage provided by Insuring Agreement G. Funds Transfer Fraud. There is no evidence of an instruction fraudulently transmitted to a Financial Institution which instruction purports to have been transmitted or issued by the Insured but was in fact fraudulently transmitted or issued by someone other than the Insured without the Insured's knowledge or consent. Additionally, there is no evidence of such an instruction directing a Financial Institution to transfer, pay, or deliver Money or Securities from a Transfer Account. Accordingly, the subject transactions are not within the meaning of Funds Transfer Fraud and therefore coverage under Insuring Agreement G. Funds Transfer Fraud cannot arise.

Coverage is not available under Insuring Agreement G. Funds Transfer Fraud for the separate and independently sufficient reason that the claimed loss falls within the definition of Social Engineering Fraud. As provided in the Social Engineering Fraud Endorsement, Social Engineering Fraud does not include Funds Transfer Fraud. As a result, this loss cannot also be Funds Transfer Fraud.

**Conclusion**

In Summary, the Social Engineering Fraud Endorsement provides coverage for this claim. In addition, Claims Expense of $5,000.00 may also be available if SJ Computer incurred any claim expense. At this time, we were not made aware that SJ Computer incurred any claim expense. Travelers has made payment of $100,000.00, which is the Single Loss Limit of Insurance, under the Social Engineering Fraud Endorsement in strict reliance upon representations made by SJ Computer, which include, without limitation, the sworn Proof of Loss with attachments.

Because we view the foregoing as dispositive of coverage for this matter, we have not raised other Policy terms, conditions, limitations or exclusions that may further limit or exclude coverage for this matter. As I am sure you can appreciate, Travelers' attention to this matter is subject to a full and complete reservation of all rights, remedies and defenses under the Policy or otherwise

including but not limited to the right to raise other Policy terms and conditions as defenses to coverage in the future as appropriate. Neither this letter, nor any actions by Travelers or any of its agents shall constitute or be deemed a waiver of any right or defense available to Travelers under the Policy or applicable law. However, if there is additional information which you believe may alter our coverage position, I invite you to provide me with that information for further coverage consideration. Also, if you would like Travelers to provide a formal coverage analysis under any other insuring agreement, please let us know.

Please contact me at the above number if you have any questions.

Sincerely,

Jill James

Jill James

cc: Zach Gilman, HORIZON AGENCY INC - Zach@horizonagency.com
Anthony Hoffman, Travelers – AHOFFMA2@travelers.com